# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WENDELL JOHNSON,

    *Plaintiff,*

    v.

OFFICER A. EME,

    *Defendant.*

Civil Action No. 24-11535 (RMB) (SAK)

**OPINION**

**BUMB,** Chief District Judge.

  **THIS MATTER** comes before the Court on the motion of Defendant Aloysius Eme ("Officer Eme") to dismiss the complaint (ECF No. 1 ("Complaint")) of *pro se* Plaintiff Wendell Johnson ("Johnson" or "Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.) Johnson is a convicted and sentenced state prisoner housed at Northern State Prison in Newark, New Jersey. He brings this action under 42 U.S.C. § 1983 against Officer Eme in his personal capacity,[1] alleging that Officer Eme violated his First Amendment rights by returning two items of Johnson's outgoing mail — a supplemental legal brief and a vote-by-mail application — rather

---

[1] Johnson's Complaint names "Officer A. Eme" without specifying whether the suit is brought against Officer Eme in his personal or official capacity. A § 1983 suit against a state employee in his official capacity is effectively a suit against the State itself and is barred by the Eleventh Amendment absent waiver or congressional abrogation, neither of which applies here. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Accordingly, the Court construes the complaint as asserting a personal-capacity claim only, which is the sole viable reading consistent with the damages Johnson seeks.

than mailing them to their intended recipients. Officer Eme moves to dismiss on the grounds that Johnson has failed to plead a "pattern and practice" or "explicit policy" of mail interference as required by Third Circuit precedent, and that Johnson's complaint, liberally construed to encompass a First Amendment right-of-access-to-courts theory, also fails to allege the actual injury that such a claim demands. Johnson opposes. (ECF No. 10.) Officer Eme replied. (ECF No. 13.) For the reasons set forth below, Officer Eme's motion to dismiss is **GRANTED**. Johnson's First Amendment mail interference claim is dismissed without prejudice. Johnson's First Amendment right-of-access-to-courts claim is dismissed with prejudice. The Court separately addresses the pending temporary restraining order ("TRO") request.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[2]

Johnson is a convicted and sentenced state prisoner serving a sentence at Northern State Prison for aggravated arson and related offenses, following a jury trial in which he represented himself. *See State v. Wendell Johnson, a/k/a Lamar Hill*, No. A-2503-21, 2024 WL 134523, at *1, *6 (N.J. Super. Ct. App. Div. Jan. 12, 2024). His projected parole eligibility date is April 5, 2027. (ECF No. 1-2, at 4.) Johnson filed this action on December 31, 2024, alleging a single incident of mail interference by Officer Eme, a corrections officer employed by the New Jersey Department of Corrections at

---

[2] The Court accepts as true the well-pleaded factual allegations in Johnson's complaint for purposes of this motion. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

Northern State Prison. (ECF No. 1.) Johnson discloses one prior federal civil rights action that was dismissed for failure to state a claim.[3]

On October 29, 2024, at approximately 12:30 p.m., Officer Eme signed a legal mail receipt acknowledging that he had returned two items of Johnson's outgoing mail to Johnson rather than mailing them to their intended recipients. (ECF No. 1, at 5.) Johnson asserts Officer Eme lacked any good cause for doing so. (*Id.*) The first returned item was a vote-by-mail application addressed to the government. (*Id.*) The second was a supplemental brief that Johnson intended to send to his criminal defense attorney for filing with the courts. (*Id.*) Johnson does not identify in his complaint which criminal proceeding the brief concerned, what legal argument or relief it advanced, or what consequence flowed from its non-delivery. (*Id.*, at 1–7.)

---

[3] Plaintiff discloses one prior federal civil rights action, *Johnson v. McGill*, No. 2:24-cv-06910 (D.N.J.), which was dismissed without prejudice for failure to state a claim. The Court's independent review further reflects additional prior actions, including *Johnson v. Kuhn*, No. 2:22-cv-04453 (D.N.J.), and *Johnson v. State of New Jersey*, No. 3:20-cv-12726 (D.N.J.), both of which appear to have been dismissed in their entirety at screening for failure to state a claim and thus may qualify as "strikes" under 28 U.S.C. § 1915(g), notwithstanding any without-prejudice designation. *See Lomax v. Ortiz-Marquez*, 590 U.S. 595, 597 (2020). By contrast, other matters identified by the Court—including *Johnson v. United States*, No. 3:21-cv-12013 (D.N.J.), and *Johnson v. Ellis*, No. 3:20-cv-11472 (D.N.J.)—appear to involve mixed dispositions and therefore may not satisfy the "entire action" requirement for a strike. *See Talley v. Wetzel*, 15 F.4th 275, 280–81 (3d Cir. 2021). The Court's review also identifies additional actions, including *Johnson v. New Jersey State Parole Board*, No. 3:22-cv-02530 (D.N.J.), whose procedural posture is not readily classifiable on the present record. The Court expresses no definitive view at this juncture as to whether any of these matters qualify as strikes but identifies them to ensure an accurate and complete record for any subsequent § 1915(g) analysis.

On the complaint form's defendant-description page, Johnson writes that "[t]his officer keep[s] returning [Johnson's] mail to his criminal attorney for filing with the courts, [Johnson's] application to vote by mail." (*Id.*, at 4.) He provides no dates, frequency, or supporting details beyond the single October 29, 2024 incident. (*Id.*, at 1–7.) Johnson also alleges that he filed nine grievances with prison officials regarding his complaints and that those officials either failed or refused to respond, which he contends satisfies his duty to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (*Id.*, at 5–6.) As relief, Johnson seeks $500 billion in compensatory and punitive damages. (*Id.*, at 6.)

On July 11, 2025, following screening pursuant to 28 U.S.C. § 1915A, this Court granted Johnson's application to proceed *in forma pauperis* and permitted the complaint to proceed solely on a Section 1983 First Amendment "interference with personal and legal mail" claim against Officer Eme. (ECF No. 3, at 2.) No other claim was authorized. (*Id.*)

On October 28, 2025, Officer Eme moved to dismiss under Rule 12(b)(6), arguing in the alternative that the complaint should be dismissed even if liberally construed to raise a First Amendment right-of-access-to-courts claim. (ECF No. 9; ECF No. 9-1, at 9–11.) Johnson filed a handwritten opposition on December 1, 2025, raising several new factual allegations and legal theories not in the complaint. (ECF No. 10.) Officer Eme replied on December 18, 2025. (ECF No. 13.) Separately, on April 7, 2026, Johnson filed a letter this Court construed as a motion for a TRO. (ECF

No. 15; ECF No. 16.) Defendant's deadline to respond to that request has been extended to May 7, 2026. (ECF Nos. 18, 20.) The motion to dismiss is now ripe.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, the Court conducts a two-step inquiry. *Fowler*, 578 F.3d at 210–11. The Court first separates the factual and legal elements of the claim, accepting well-pleaded facts as true and drawing all reasonable inferences in the plaintiff's favor, while disregarding bare legal conclusions and formulaic recitations of the elements of a cause of action. *Iqbal*, 556 U.S. at 678. It then determines whether the surviving factual allegations state a plausible — not merely conceivable — claim for relief. *Fowler*, 578 F.3d at 211. The Court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as

undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Because Johnson is proceeding *pro se*, the Court construes his pleadings liberally and holds them to less stringent standards than formal pleadings drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That obligation does not, however, require the Court to supply missing factual allegations, manufacture legal theories the plaintiff has not advanced, or credit conclusory assertions untethered to any factual support. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999). Nor may a *pro se* plaintiff cure pleading deficiencies by raising new factual allegations for the first time in an opposition brief. *See Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

## III.    DISCUSSION

Officer Eme raises two grounds for dismissal. First, he argues that Johnson has failed to allege the "pattern and practice" or "explicit policy" of mail interference that Third Circuit precedent requires to state a plausible First Amendment mail interference claim. Second, he argues in the alternative that, even if the complaint is liberally construed to raise a First Amendment right-of-access-to-courts theory, that

claim fails for want of a cognizable actual injury. The Court also addresses exhaustion, the damages demand, and the pending TRO.[4]

## A. First Amendment Mail Interference Claim

The First Amendment protects the right of prisoners to send and receive mail free from unwarranted governmental interference. *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006). That right operates within the legitimate penological constraints of prison administration. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Third Circuit has imposed a threshold pleading requirement: to state a plausible First Amendment mail interference claim, a prisoner must allege either a "pattern and practice" of mail interference or an "explicit policy" directing such interference. *Jones v. Brown*, 461 F.3d at 359; *see also Muir v. Wetzel*, No. 20-4459, 2020 WL 6799250, at *5 (E.D. Pa. Nov. 19, 2020). This requirement applies equally to legal mail and personal mail; courts in this circuit draw no material First Amendment distinction between the two categories at the pleading stage. *See Barrett v. Matters*, No. 14-1250, 2015 WL 5881602, at *5–6 (M.D. Pa. Sept. 30, 2015).

The rationale for this threshold requirement is grounded in the distinction between individual misconduct and systemic constitutional harm. An isolated act of mail interference — whether the product of negligence, administrative error, or a single officer's momentary lapse — does not implicate the constitutional values the First

---

[4] Officer Eme does not move to dismiss the underlying complaint on exhaustion grounds, and the Court does not reach that question as to the claims addressed in this Opinion. The Court separately addresses exhaustion in connection with Johnson's motion for preliminary injunctive relief in Section IV.E below.

Amendment protects in the prison mail context. It is the systemic, repeated, or policy-driven suppression of an inmate's correspondence that rises to constitutional dimension. Accordingly, the Third Circuit has repeatedly held that "a single, isolated interference" with inmate mail is "insufficient to constitute a First Amendment violation." *Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) (citation omitted); *accord Iwanicki v. Pennsylvania Dep't of Corr.*, 582 F. App'x 75, 79 (3d Cir. 2014). Johnson's complaint fails both available pleading paths.

As to pattern and practice: Johnson's complaint describes a single, isolated act — on October 29, 2024, Officer Eme returned two items of Johnson's outgoing mail. That is the entirety of the alleged misconduct in the statement of claims. (ECF No. 1, at 5.) Under controlling Third Circuit authority, a single incident is categorically insufficient. *Nixon*, 501 F. App'x at 178. The only potential hook for a pattern theory in the complaint is Johnson's assertion on the defendant-description page that Officer Eme "keep[s] returning" his mail. (ECF No. 1, at 4.) The Court has carefully considered whether this phrase, even under the liberal construction owed to *pro se* pleadings, can support a pattern allegation. It cannot, for two independent reasons.

First, read in context, the phrase does not function as a freestanding allegation of recurrent misconduct. It appears in the section where Johnson is asked to describe how Officer Eme was "involved in the case," immediately before Johnson details the October 29, 2024 incident. The phrase reads as a characterization of that specific incident — an officer who, on that occasion, returned Johnson's mail — not as an independent allegation that the same conduct occurred on other unspecified occasions.

Second, even if the phrase were read as a standalone recurrence allegation, it is entirely devoid of factual content. It identifies no other dates, no frequency, no additional items of mail, and no other circumstances from which the Court could assess whether a plausible pattern exists. A bare assertion of recurrence, untethered to any supporting facts, is precisely the kind of conclusory allegation the Court need not credit on a motion to dismiss. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997); *United States v. City of Philadelphia*, 644 F.2d 187, 204 (3d Cir. 1980). The contrast with cases sustaining a pattern allegation is telling: in *Taylor v. Oney*, the Third Circuit sustained a mail interference claim where the prisoner specifically alleged that his legal mail was opened outside his presence on eight distinct occasions over a four-year period, providing a concrete temporal and numerical foundation from which to infer a pattern. 196 F. App'x 126, 127 (3d Cir. 2006). Johnson's complaint provides nothing of the kind.

As to explicit policy: Johnson argues in his opposition brief that Officer Eme interfered with his mail "due to an explicit policy." (ECF No. 10, at 5.) Even setting aside that this argument appears for the first time in Johnson's opposition and cannot amend the complaint, *Zimmerman*, 836 F.2d at 181, it fails on the merits. In the analogous context of § 1983 municipal liability, the Third Circuit has held that a "policy" within the meaning of the statute is made when "a decisionmaker possess[ing] final authority to establish [the relevant] policy . . . issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citation omitted). To survive a motion to dismiss on an explicit-policy theory, a

plaintiff must identify the specific policy — not merely assert in conclusory terms that one exists. *See Hill v. City of Philadelphia*, No. 16-3868, 2017 WL 3263786, at *5-8 (E.D. Pa. Aug. 1, 2017) ("[T]he plaintiff must 'identify a custom or policy, and specify what exactly that custom or policy was.'") (citing *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009)). Johnson identifies no specific policy anywhere in his complaint or, tellingly, his opposition brief. His assertion of an explicit policy is unsupported and conclusory and cannot sustain his claim under either the complaint or the opposition.

Johnson's opposition brief also attempts to supplement the complaint with new factual allegations — including a claim that Officer Eme interfered with his legal mail on "at least 10 different dates" before October 29, 2024, (ECF No. 10, at 5), and a February 3, 2023 New Jersey Department of Corrections contraband seizure report as purported evidence of a broader pattern. (ECF No. 10, at 9.) The Court may not consider either on this motion. *Zimmerman*, 836 F.2d at 181; *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007); *Mayer*, 605 F.3d at 230.

The contraband seizure report presents an additional, independent deficiency: it is simply not probative of any claim against Officer Eme. The report — dated February 3, 2023, more than nineteen months before the conduct alleged in the complaint — identifies the seizing officer as "Ofc. P. Rex," not Aloysius Eme. (ECF No. 10, at 11.) A document recording the conduct of a different officer at a different time establishes nothing about Officer Eme's conduct. Whatever relevance the report might have to a claim against Officer Rex, it cannot substitute for factual allegations concerning the defendant actually named in this action. Even if the Court were to

consider the report — which it does not — it would be of no assistance to Johnson in this case.

Accordingly, Johnson's First Amendment mail interference claim is dismissed without prejudice for failure to allege either a pattern and practice or an explicit policy of mail interference.[5].

**B. First Amendment Right-of-Access-to-Courts Claim**

Although the Court's July 11, 2025 screening order authorized only a mail interference claim (ECF No. 3, at 2), Officer Eme's moving brief argued in the alternative that dismissal is also warranted if the complaint is liberally construed to raise a First Amendment right-of-access-to-courts theory. (ECF No. 9-1, at 9–11.) Johnson addressed this theory in his opposition. (ECF No. 10, at 7–9.) Because Officer Eme placed the access-to-courts theory squarely before the Court, both parties have

---

[5] The Court notes an additional, independent deficiency as to the vote-by-mail sub-claim specifically. Even if Johnson had adequately alleged a pattern and practice of interference, the return of a vote-by-mail application cannot have caused him a cognizable First Amendment injury because, as a convicted prisoner serving a sentence of incarceration in a New Jersey state facility, he has no right to vote under New Jersey law. *See* N.J. Const. art. II, § 1, ¶ 7 ("The Legislature may pass laws to deprive persons of the right of suffrage who shall be convicted of such crimes as it may designate."); N.J. Stat. Ann. § 19:4-1(8) (disqualifying from suffrage "[a]ny person . . . serving a sentence of incarceration as the result of a conviction of any indictable offense"). A First Amendment mail interference claim requires a showing that the interference harmed a constitutionally protected interest. Where the underlying activity is itself foreclosed by law, no such interest exists and the sub-claim fails irrespective of the defendant's conduct. This point is raised in a footnote because the pattern-and-practice and explicit-policy deficiencies independently dispose of the mail interference claim in its entirety; this provides only an additional, independent basis for dismissal of the vote-by-mail sub-claim.

briefed it, and resolving it now provides Johnson fair notice of what he may and may not replead, the Court addresses it here in the interest of judicial economy.

The First and Fourteenth Amendments guarantee prisoners a right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). To state a plausible access-to-courts claim under § 1983, a prisoner must satisfy three requirements. First, the underlying proceeding must fall within one of two categories recognized by the Supreme Court: a direct or collateral challenge to the prisoner's sentence, or a challenge to the conditions of confinement. *Monroe*, 536 F.3d at 205 (citation omitted); *see also Lewis v. Casey*, 518 U.S. 343, 355–56 (1996) (declining to extend the access-to-courts right beyond these categories). Second, the prisoner must allege an "actual injury" — that is, that he "lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim." *Monroe*, 536 F.3d at 205; *Caldwell v. Beard*, 305 F. App'x 1, 3 (3d Cir. 2008) ("An actual injury is shown only where a nonfrivolous, arguable claim is lost."). Third, the prisoner must show that no other remedy could provide recompense for the lost claim. *Monroe*, 536 F.3d at 205.

Johnson's access-to-courts claim — to the extent one can be construed from his complaint — fails at the threshold. The Complaint alleges only that the returned supplemental brief was intended for Johnson's "criminal attorney for filing with the courts." (ECF No. 1, at 5.) It does not allege the nature of the proceeding, whether it constituted a challenge to Johnson's sentence or conditions of confinement, or any

other facts that would bring it within the recognized categories. *Monroe*, 536 F.3d at 205.

Johnson's opposition brief attempts to fill this gap by alleging for the first time that the supplemental brief concerned his direct criminal appeal and specifically challenged whether the trial court improperly eliminated the degree of crime from the verdict sheet. (ECF No. 10, at 8.) The Court may not consider this after-the-fact allegation. *Zimmerman*, 836 F.2d at 181. However, the Court addresses the claim as if Johnson had so alleged — both as an exercise of liberal construction and because it affords the clearest path to a final disposition that serves the parties' interests — and finds that even accepting the opposition brief's characterization *arguendo*, the claim fails on the actual-injury requirement and is not susceptible to amendment.

The actual-injury requirement demands more than an allegation that outgoing mail was returned. A prisoner must allege that the interference caused the loss of a specific, nonfrivolous, arguable legal claim — not merely that a filing was impeded. *Jones v. Brown*, 461 F.3d at 359. The Third Circuit has been precise about this standard: the question is not whether the underlying claim ultimately succeeded on the merits, but whether it was "arguable" — that is, whether it had some colorable legal basis at the time it was allegedly lost. *Monroe*, 536 F.3d at 205; *Caldwell*, 305 F. App'x at 3. Johnson's Complaint alleges no such arguable claim — it identifies no proceeding, no argument, and no lost opportunity — and his opposition brief, while more specific, cannot cure the Complaint's deficiency.

Moreover, the Court may take judicial notice of the published record of Johnson's direct criminal appeal — *State v. Wendell Johnson, a/k/a Lamar Hill*, No. A-2503-21, 2024 WL 134523 (N.J. Super. Ct. App. Div. Jan. 12, 2024) — for the existence and legal effect of that adjudication, not for the truth of any facts recited therein. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); Fed. R. Evid. 201(a). That record is dispositive as to whether any arguable claim was lost.

The Appellate Division found that Johnson had represented himself at trial and raised no objection to either the jury charge or the verdict sheet when they were reviewed with the parties. *Johnson*, 2024 WL 134523, at *4, *6. That failure to object at trial confined any verdict-sheet argument on direct appeal to plain-error review — the most demanding standard of appellate review in New Jersey, requiring a showing that the error was "clearly capable of producing an unjust result." *State v. Cuff*, 217 A.3d 129, 140 (N.J. 2019) (citation omitted); N.J. Court Rules, R. 2:10-2. An argument subject to plain-error review — as opposed to the ordinary harmless-error standard — is one that has been substantially narrowed by the defendant's own trial-level waiver. Its viability as an "arguable" claim for purposes of the access-to-courts analysis is materially diminished by that waiver from the outset.

More fundamentally, the Appellate Division reached the merits and found that the "compelling nature" of the incriminating evidence against Johnson rendered any trial-level errors harmless. *Johnson*, 2024 WL 134523, at *23. It further stated that it had "duly considered all other points and sub-points raised by defendant" and

concluded they "lack[ed] sufficient merit to warrant discussion" because the record either lacked factual support for or "blatantly contradict[ed]" Johnson's assertions. *Id.* The New Jersey Supreme Court denied certification. *State v. Johnson*, 256 N.J. 534 (2024). The United States Supreme Court denied certiorari. *Johnson v. New Jersey*, 145 S. Ct. 233 (2024).

The significance of this record for the arguability analysis is direct. The arguable-claim standard under *Monroe* and *Jones v. Brown* asks whether the claim the prisoner was allegedly impeded from pursuing had some colorable legal basis — not a guaranteed path to victory, but a nonfrivolous argument. *See Lewis*, 518 U.S. at 353 n.3. Here, the Appellate Division did not merely rule against Johnson on a close question; it found that his arguments either lacked factual support in the record or were "blatantly contradict[ed]" by it. *Johnson*, 2024 WL 134523, at *8. An argument that is blatantly contradicted by the record — the court's own characterization — is not an arguable claim in any meaningful sense. Combined with Johnson's trial-level waiver of the verdict-sheet objection, which constrained the argument to plain-error review, the appellate record forecloses any plausible allegation that Officer Eme's return of the supplemental brief caused the loss of a nonfrivolous, arguable claim. *See Jones v. Brown*, 461 F.3d at 359. There is accordingly no actual injury, and the claim fails on that independent ground as well.

Because the access-to-courts claim fails at the threshold for want of an adequately alleged qualifying proceeding, and on the actual-injury requirement as confirmed by the judicially noticeable appellate record, and because the appellate

record establishes that amendment would be futile, this claim is dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).[67]

### C. Damages Demand

Johnson seeks $500 billion in compensatory and punitive damages. (ECF No. 1, at 6.) Because the Court is dismissing the complaint, it need not resolve the damages question at this stage. The Court notes, however, for Johnson's guidance should he elect to replead, that compensatory damages under § 1983 require proof of actual injury causally connected to the constitutional violation. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986). Punitive damages are available under § 1983 only upon a showing that the defendant's conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the plaintiff's federally protected rights.

---

[6] The Court also notes that Johnson argues in his opposition brief that Officer Eme's acceptance of his well-pleaded factual allegations as true constitutes a "waiver" of defenses entitling Johnson to summary judgment. (ECF No. 10, at 4.) This fundamentally misreads the applicable standard. Officer Eme's acknowledgment of the well-pleaded facts restated the governing Rule 12(b)(6) framework. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). It is neither an admission for any other purpose nor a waiver of any defense. A Rule 12(b)(6) motion to dismiss and a Rule 56 motion for summary judgment are governed by entirely distinct procedural rules and evidentiary standards. *Compare* Fed. R. Civ. P. 12(b)(6) *with* Fed. R. Civ. P. 56(a). This argument is without merit.

[7] The Court's with-prejudice dismissal of the access-to-courts claim is expressly limited to the specific claim arising from the October 29, 2024 incident and Officer Eme's alleged interference with Johnson's supplemental brief in connection with the direct criminal appeal that has since been fully adjudicated. It does not foreclose Johnson from bringing a future access-to-courts claim against Officer Eme or any other defendant premised on different facts — for example, interference with mail in connection with a distinct, pending, nonfrivolous legal proceeding not yet litigated to final judgment. The with-prejudice disposition reflects solely that amendment of *this* access-to-courts claim, premised on *these* facts, would be futile.

*Smith v. Wade*, 461 U.S. 30, 56 (1983). An amended complaint that fails to allege facts plausibly supporting either category of damages will be subject to dismissal on that ground as well.

### D. Plaintiff's TRO Request

On April 7, 2026, Johnson filed a letter this Court construed as a motion for a temporary restraining order or preliminary injunction. (ECF No. 15; ECF No. 16.) Defendant filed his opposition on May 7, 2026. (ECF No. 21.) The motion is now ripe and is **DENIED** for two independent reasons.

First, Johnson's motion is procedurally defective because the injuries it alleges bear no plausible relationship to the conduct asserted in the complaint. The Third Circuit has instructed that "there must be 'a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010) (citation omitted); *accord James v. Varano*, No. 14-cv-01951, 2017 WL 895569, at *6–8 (M.D. Pa. Mar. 7, 2017). Johnson's complaint, as authorized to proceed by this Court's July 11, 2025 screening order, concerns a single First Amendment mail interference claim arising from Officer Eme's return of two items of outgoing mail on October 29, 2024. (ECF No. 1; ECF No. 3.) Johnson's TRO motion alleges an entirely different set of injuries: ongoing verbal intimidation and threats on his life by NJDOC employees in retaliation for filing this and other civil complaints; the destruction of his legal books, Bible, and transcripts; and sexual harassment. (ECF No. 15, at 1–5.) The motion further seeks relief — an immediate institutional transfer to New Jersey State Prison or South Woods State Prison — that

is wholly untethered to the $500 billion in damages sought in the complaint. (*Compare* ECF No. 15, at 3, *with* ECF No. 1, at 6.) The purpose of preliminary injunctive relief is to preserve the status quo pending resolution of the underlying claims on the merits, not to obtain relief on wholly unrelated claims that have never been pleaded, screened, or authorized to proceed. Because Johnson's motion bears no plausible relationship to the conduct alleged in his complaint, it is denied on that threshold basis.

Second, and independently, Johnson's motion must be denied because he has not alleged exhaustion of administrative remedies with respect to the new claims it raises. The PLRA mandates that a prisoner exhaust all available administrative remedies before seeking relief in federal court with respect to prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002). That requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* (citation omitted). Johnson's motion alleges that he was threatened on February 17, 2026, yet he nowhere alleges that he sought any administrative relief through the NJDOC's grievance process in the two months before filing his motion, or that he notified prison officials of any of the incidents described. (ECF No. 15, at 1–9.) Courts in this circuit are precluded from considering unexhausted claims. *Spruill v. Gillis*, 372 F.3d 218, 227 (3d Cir. 2004). The motion is accordingly denied on this ground as well. Because the motion is denied on two independent threshold grounds, the Court does not reach the *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) four-factor analysis. The Court further notes that, even were it to reach the merits, Johnson could

not satisfy the threshold gateway requirements for preliminary injunctive relief. A movant must first demonstrate a likelihood of success on the merits and a likelihood of irreparable harm. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (citing *Winter*, 555 U.S. 7, 20). Given that Johnson's underlying complaint is dismissed by this Opinion, he cannot demonstrate a likelihood of success on the merits of any currently pending claim. The *Winter* analysis need not be reached.

### E. Leave to Amend

The Third Circuit instructs that district courts should generally extend a *pro se* plaintiff at least one opportunity to amend before dismissing a civil rights complaint with prejudice. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Grayson*, 293 F.3d 103, 108. Leave to amend is properly denied only where amendment would be inequitable or futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

As to the mail interference claim, the Court cannot conclude at this stage that amendment would be futile. Johnson may possess good-faith factual bases — specific dates, descriptions of additional incidents, and contextual details about a pattern or explicit policy — that he omitted from his initial complaint. He is granted leave to file an amended complaint as to this claim within thirty (30) days of the accompanying Order.

As to the access-to-courts claim, amendment would be futile for the reasons explained in Section IV.C above. The judicially noticeable appellate record establishes that Johnson cannot plausibly allege the loss of a nonfrivolous, arguable claim arising

from the October 29, 2024 incident. Leave to amend the access-to-courts claim is denied. For the avoidance of doubt, any amended complaint Johnson chooses to file may not reassert an access-to-courts claim premised on Officer Eme's interference with the supplemental brief on October 29, 2024, or on the direct criminal appeal proceedings addressed in Section IV.C.

Should Johnson file an amended complaint, it must be a complete and self-contained pleading superseding the original in all respects. As to any mail interference claim, it must set forth: the date of each alleged incident of interference; the identity of the officer responsible; the nature of the mail affected; and any factual basis from which the Court could infer that the conduct formed part of a pattern and practice or was carried out pursuant to an identifiable explicit policy. Vague or conclusory assertions of recurrence, unmoored from specific facts, will not suffice. *See Iqbal*, 556 U.S. at 678; *City of Philadelphia*, 644 F.2d at 204.

## IV.    CONCLUSION

For the foregoing reasons, Officer Eme's motion to dismiss (ECF No. 9) is **GRANTED**. Johnson's First Amendment mail interference claim is **DISMISSED WITHOUT PREJUDICE**. Johnson's First Amendment right-of-access-to-courts claim is **DISMISSED WITH PREJUDICE**. Johnson shall have thirty (30) days from the date of the accompanying Order to file an amended complaint limited to the mail interference claim. Johnson's motion for a temporary restraining order (ECF No. 15) is **DENIED**. An appropriate Order accompanies this Opinion.

*s/ Renée Marie Bumb*

**Renée Marie Bumb**
**Chief   United   States**
**District Judge**

Dated: **May 18, 2026**